IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Crim. No. 1:14-CR-0239 |
| v. | : |
| | : Judge Sylvia H. Rambo |
| SHANNON LEMOR WILLIAMS | : |

# **M E M O R A N D U M**

In this criminal case, Defendant was charged with one count related to his alleged possession of a firearm in the Middle District of Pennsylvania. (Doc. 1.)[1] Presently before the court is Defendant's motion to suppress, wherein he seeks suppression of the physical evidence seized from the residence at 623 West Gas Avenue due to an alleged unconstitutional search of the residence at issue. (Doc. 27.) Because the court finds that the officers lawfully entered the residence with consent, the court will deny Defendant's motion to suppress in its entirety.

**I.      Background**

On September 10, 2014, Shannon Lemor Williams ("Defendant") was charged in a single count indictment related to an incident involving his alleged unlawful possession of a handgun. (*See* Doc. 1.) On October 31, 2014, Defendant filed the instant motion to suppress evidence (Doc. 27) and brief in support (Doc. 28), and the court scheduled a hearing on the matter to be held November 13, 2014 (Doc. 31). Defendant's motion is premised on his position that the firearm for which he was indicted was the subject of an unconstitutional entry into his home.

---

[1] The sole charge contained in the indictment is for Defendant's alleged possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 1.)

(*See* Docs. 27 & 28.)  Defendant reasons that the firearm charged in the indictment, *to wit*, a Ruger, Super Black Hawk .44 caliber revolver handgun, serial number 8479963, should be suppressed as the product of an unreasonable search and seizure.  (*See* Doc. 27.)  It is uncontested that law enforcement officers seized the firearm from Defendant's bedroom without the benefit of a warrant.  However, because the credible evidence presented at the hearing satisfies the court that a co-occupant of the residence gave consent for the seizure, the court concludes that the warrantless search and seizure were not unconstitutional.

      At the suppression hearing, the Government presented the testimony of four witnesses.  Shamela Hightower, the victim in this case, testified that, in the late evening of March 19, 2014, she and Defendant engaged in an argument while they were both at her residence located at 623 W. Gas Avenue, York County, Pennsylvania ("Gas Avenue residence").[2]  (*See* Doc. 42, pp. 4-5 of 101.)  The argument resulted in the two individuals physically separating, with Defendant being on the first floor of the residence and Hightower on the second floor bedroom with her two children.  (*See id.* at p. 4 of 101.)  As a result of Hightower's refusal to answer Defendant's repeated attempts to call her on her cellular telephone, Defendant came upstairs and confronted Hightower, who was on the bed.  (*See id.* at p. 5 of 101.)  Defendant physically attacked Hightower by punching her head and face.  (*See id.* at pp. 5-6 of 101.)  Ultimately, Defendant demanded Hightower to immediately leave the house.  (*See id.* at p. 6 of 101.)

---

[2] The evidence presented at the suppression hearing established that Hightower and Defendant were cohabitating at the Gas Avenue residence.  (*See* Doc. 42, p. 6 of 101.)

While the commotion was ongoing, York City Police Officer Jeffrey Gilliland arrived at the Gas Avenue residence in response to a noise complaint related to children running up and down the stairs. (*See id.* at pp. 7, 64 of 101.) Hightower complied with Defendant's directive to answer the door and get the officer away from the house by telling Officer Gilliland that everything was fine. (*See id.* at p. 7 of 101.)

After Officer Gilliland left, Hightower returned upstairs and took her young daughter into the bathroom. (*See id.*) Defendant again assaulted Hightower. (*See id.*) At some point, Defendant retrieved a silver handgun from the bedroom and placed the barrel of the gun to the back of Hightower's head and, according to Hightower, said "[B]itch, you think I'm playin[g] with you, you don't know the rules. . . . I'll blow your head off in front of your kids." (*Id.* at p. 9 of 101.)

Hightower left the house and called her friend Shakala Handy to drive her to her mother's house located at 540 McKenzie Street in York County, Pennsylvania ("McKenzie Street residence"). (*See id.* at pp. 9-10 of 101.) Hightower's mother, Jessie Dukes, called the police to report the incident involving her daughter. (*See id.* at pp. 10, 20, 94-95 of 101.) At approximately 11:19 p.m., York City Police Officer Mark Orlando responded to Dukes's call and arrived at the McKenzie Street residence. (*Id.* at p. 42 of 101.) Hightower told Officer Orlando about her encounter with Defendant. (*See id.*) Officer Orlando thereafter requested assistance from Officer Gilliland, and Officer Gilliland requested the assistance of Sergeant Nicholas Figge. (*See id.* at pp. 52-53 of 101.)

Although Officer Orlando did not notice any injuries to Hightower's face (*id.* at p. 46 of 101), he went to the Gas Avenue residence to arrest Defendant

based on Hightower's allegations (*see id.* at p. 43 of 101), which Officer Gilliland testified is a practice consistent with the protocol followed in a domestic relations incident (*see id.* at p. 58 of 101).[3] Officer Orlando further testified that Defendant was cooperative when confronted (*see id.* at p. 47 of 101) and that, notwithstanding Defendant's attempt to explain that Hightower's account was an exaggeration of the incident (*see id.* at p. 43 of 101), he placed Defendant under arrest and transported him to the central booking station (*see id.* at pp. 45-50 of 101). Around the same time, Officer Gilliland arrived at the McKenzie Street residence and spoke with Hightower, who wrote a statement memorializing her account of the incident. (*See id.* at pp. 52-53 of 101.) During his encounter with Hightower, Officer Gilliland did not notice any facial injuries with the victim, but noticed a two-inch cut on her forearm. (*Id.* at p. 53 of 101.) Officer Gilliland transported Hightower to the Gas Avenue residence (*see id.*), and Hightower consented to a search of the residence by executing a consent to search form, which was witnessed by Dukes (*see id.* at pp. 56-57 of 101; *see also* Gov. Ex. 1). Although there was some question made during the hearing regarding whether Hightower truly appreciated the scope of the search the officers would ultimately perform (*see* Doc. 42, pp. 32, 78 of 101), Hightower

---

[3] At the hearing, Officer Gilliland testified as follows regarding standard protocol in a suspected domestic abuse scenario:

> In a domestic dispute, we make an arrest, they spend the night in central booking. That solves the problem for the night and also safety issues in case if they were to be released and they go back to the address and God forbid it does get a lot more serious. So we make an arrest *whenever we see any type of injury*, and [the suspected abuser] spend[s] the night in central booking.

(Doc. 42, p. 58 of 101 (emphasis supplied).)

unequivocally testified that she voluntarily consented to the search of the entire residence (*see id.* at pp. 14-15 of 101).

Officer Gilliland and Sergeant Figge entered the Gas Avenue residence and initiated a search of the premises. (*See id.* at p. 53 of 101.) Officer Gilliland testified that he searched the first floor of the house while Sergeant Figge searched the second floor. (*Id.*) During his search of the second floor, Sergeant Figge found a handgun, which was consistent with the handgun described by Hightower. (*Id.*)

Although Defendant did not testify on his own behalf, he presented the testimony of Richard Garvey, an investigator who at all times relevant to the instant action was employed by the Office of the Federal Public Defender,[4] Shakala Handy, and his mother, Lorena Williams. Garvey testified that Hightower told him that she did not believe the officers would search the entire house based on her consent, which corroborated a report[5] he had himself prepared. (*See id.* at p. 78 of 101.) Handy, the individual who transported Hightower from the Gas Avenue residence to the McKenzie Street residence, testified that she heard an officer tell Hightower that the Defendant refused consent to search, which contradicted the testimony of the officers. (*See id.* at pp. 86-88 of 101.) Lorena Williams testified that Hightower told her that she never gave the police permission to search the Gas Avenue residence (*see id.* at p. 91 of 101), which contradicted the testimony offered by Hightower herself (*compare id.* at p. 91 of 101, *with id.* at pp. 14-15 of 101).

---

[4] The court notes that, despite the attorneys agreeing that non-party witnesses would be sequestered, the defense investigator was present at counsel table throughout the entire duration of the suppression hearing.

[5] The report prepared by Garvey was neither reviewed for accuracy nor signed by Hightower, who was the subject of the interview.

5

## II.     <u>Legal Standard</u>

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). The applicable burden is proof by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

The Fourth Amendment to the Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The touchstone of the Fourth Amendment is reasonableness, as the Fourth Amendment does not prohibit all searches – only those that are unreasonable. *See Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). The general rule is that the warrantless entry into a person's house is unreasonable per se. *Payton v. New York*, 445 U.S. 573, 586 (1980) ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.").

One exception to the warrant requirement, however, is a search or seizure conducted pursuant to voluntary consent. *See United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). To justify a search based on consent, the government "has the burden of

proving that the consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). To determine whether consent was given voluntarily, a court examines the totality of the circumstances. *Price*, 558 F.3d at 278 (citing *Schneckloth*, 412 U.S. at 227). Factors important to this analysis include the age, education, and intelligence of the consenter, whether he was advised of his constitutional rights, the length of the encounter, the duration of the questioning, and the use of physical punishment. *Id*. Also relevant is the setting in which the consent was obtained and the parties' verbal and non-verbal actions. *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (citing *United States ex rel. Harris v. Hendricks*, 423 F.2d 1096 (3d Cir. 1970)); *see also Price*, 558 F.3d at 278 (citing *Schneckloth*, 412 U.S. at 226). Fundamental to the concept of voluntariness is that valid consent must not be coerced. *Schneckloth*, 412 U.S. at 228.

"The individual giving consent must also possess the authority to do so and 'the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.'" *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011) (internal citations omitted). "Common authority rests not on property rights but 'rather on mutual use of the property by persons generally having joint access or control . . . so that it is reasonable to recognize that any of the cohabitants has the same right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.'" *Id*. at 230-31 (quoting *Matlock*, 415 U.S. at 172 n.7). "[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to

the police by another resident." *Id*. (citing *Georgia v. Randolph*, 547 U.S. 103, 120 (2006)).

### III. Discussion

At the conclusion of the hearing, the court was faced with resolving several factual inconsistencies that had arisen through the witnesses' testimony. In that regard, the court finds that, contrary to the testimony of Lorena Williams, Hightower gave police permission to search the Gas Avenue residence. Additionally, the court credits the testimony of the officers and finds that the officers never requested from Defendant – and therefore Defendant never withheld – consent to search the Gas Avenue residence, as the only evidence presented to support a contrary finding was in the form of hearsay presented from Hightower, Dukes, and Handy, who each testified that an officer indicated that they did not receive consent to search from Defendant. Supporting the court's finding to the contrary is the testimony of each of the officers, who testified that no officer requested Defendant's consent to search. Accordingly, the court resolves this factual dispute in favor of the Government because the court has no reason to question the veracity of the officers' testimony, the evidence presented is a first-hand recitation of their own conduct rather than hearsay, and because the difference between "not obtaining from" and "refusing to grant" may be a distinction completely lost on individuals not familiar with the law.

In his motion, Defendant challenges the search on two grounds: first, that Hightower did not consent and, second, that the officers' removal of him from the residence in order to prevent him from objecting to the search was constitutionally infirm. The court rejects both arguments.

At the outset and as stated, the court finds that Hightower gave consent to search the Gas Avenue residence. Hightower was Defendant's girlfriend and there is no dispute that she lived in the house with Defendant and shared the bedroom where the handgun was found. Moreover, Hightower told the officers that she lived in the house, and she clearly kept her belongings, slept, and raised her children in the house. A third party has actual authority to consent to a search of another's home when the third party possesses common authority over or joint access or control of the property. *See Matlock*, 415 U.S. at 170. Accordingly, Hightower had authority to consent at the time of the search.

The court also finds that Hightower's consent was voluntary based on the totality of the circumstances. *See United States v. Crandell*, 554 F.3d 79, 88 (3d Cir. 2009). The court has no reason to find that Hightower was anything other than of at least average age, education, and intelligence. Significantly, Hightower was advised of her constitutional rights before consenting to the search, and executed a consent to search form (Gov. Ex. 1) after she had already given consent orally (Doc. 42, p. 13 of 101). Moreover, Hightower testified that the officers neither threatened nor made any promises to her. (*See id*. at pp. 14-15 of 101.) There was no evidence of physical punishment, repetitive questioning, or undue length to the encounter. Hightower clearly and unequivocally testified that she voluntarily signed the form consenting to the officers' search of her house. (*Id.* at p. 15 of 101.) Considering the totality of the circumstances, the court concludes that Hightower had the authority to consent to the search of the Gas Avenue residence and that her consent was given voluntarily.

Defendant next contends that the circumstances present in this case cause the consent given by Hightower to be constitutionally infirm. Specifically, Defendant argues that the officers removed him from the premises to avoid any objection to a search, which he argues invalidates Hightower's consent under *Georgia v. Randolph*, 547 U.S. 103 (2006). (Doc. 28, p. 4 of 6.) Defendant reasons that his arrest was unreasonable because the officers did not have the ability to take him into custody pursuant to 18 Pa. C.S. § 2711.[6] (Doc. 48, p. 5 of 12.)

In *Randolph*, the Supreme Court addressed whether the consent to search of one co-tenant overrides the objection of another physically present co-tenant. 547 U.S. 103. The Court held that a warrantless search of a shared dwelling for evidence against a co-inhabitant over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident. *Id*. at 120.

The Court emphasized that "[t]he constant element in assessing . . . reasonableness in the consent cases . . . is the great significance given to widely shared social expectations." *Id*. at 111. The reasonableness of a search is "a function of commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest." *Id.* However, "there is no common understanding that one co-tenant generally has a right or authority to

---

[6] The court notes that this argument was first raised in Defendant's post-hearing brief, stripping from the Government the ability to adequately present testimony fully addressing the extent of the injuries displayed by Hightower or other corroboration. Although this issue was not specifically raised in the motion to suppress, the court accepts Defendant's representation that the testimony of the officers at the hearing established, for the first time, a basis to challenge the propriety of the arrest. Because the court concludes that the record contains evidence to establish corroboration of Hightower's allegations and in light of the court's disposition of the instant motion, any additional corroborative evidence would be superfluous.

prevail over the express wishes of another, whether the issue is the color of the curtains or invitations to outsiders." *Id*. at 114.

However, the Court distinguished between an objector who is physically present and a potential objector who is nearby but not part of the conversation. *Id*. at 121. It stated that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy loses out." *Id.* The majority noted that the distinction was formalistic, but stressed that:

> So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

*Id*. at 121-22. Recently, the Supreme Court underscored the limited scope of *Randolph* in *Fernandez v. California*, ___U.S. ____, 134 S.Ct. 1126 (2014), by refusing to extend *Randolph*'s holding to a situation in which a co-occupant consented to a search of the home she shared with the defendant after his arrest and removal from the scene. In *Fernandez*, the defendant moved to suppress the evidence seized from a warrantless search based on his prior refusal to consent to a search of the apartment. 134 S.Ct. 1131. In affirming the denial of the defendant's motion to suppress, the Court reiterated that the consent of one resident of jointly occupied premises is generally sufficient to justify a warrantless search. *Id.* at 1133. The Court characterized the rule in *Randolph* as a "narrow exception," and

emphasized that the rule is premised on the physical presence of the objecting occupant. *Id*.

The facts in *Fernandez* are similar to those present here. In *Fernandez*, the police arrived at the residence in pursuit of the defendant who had been identified as a participant in an armed robbery. *Id.* at 1130. As they entered the building, police heard screams coming from an apartment. *Id.* A woman showing signs of recent injury answered a knock by police. *Id.* The defendant appeared at the door and refused consent for police entry to conduct a protective sweep. *Id.* The police arrested the defendant and removed him from the apartment based on their suspicion that he had assaulted the woman. *Id.* Approximately one hour later, one of the police officers returned to the apartment, told the woman that the defendant had been arrested, and asked for and received both oral and written consent to search the apartment. *Id.* The search produced gang paraphernalia, a knife, clothing matching the description of the robbery victim, and ammunition. *Id*. at 1130-31.

In reaching its holding, the Court characterized the discussion in *Randolph* of the effect of removal of the objecting occupant by police as dictum. *Id*. at 1134. The Supreme Court explained that this discussion "is best understood . . . to refer to situations in which the removal of the potential objector is not objectively reasonable," and held that "an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason." *Id*.

Defendant argues that he was not absent due to a lawful arrest, contending that Officer Orlando lacked sufficient authority to effectuate a warrantless arrest pursuant to 18 Pa. C.S. § 2711. The validity of an arrest is

determined by the law of the state where the arrest occurred. *See Ker v. California*, 374 U.S. 23, 37 (1963). Based on his alleged altercation with Hightower, Defendant was arrested for and charged with, *inter alia*, simple assault, in violation of 18 Pa. C.S. § 2701, recklessly endangering another person, in violation of 18 Pa. C.S. § 2705, and terroristic threats, in violation of 18 Pa. C.S. § 2706.[7] *See Commonwealth v. Williams*, CP-67-CR-2349-2014, Docket (Pa. Com. Pl. York. Cnty. Mar. 19, 2014). Under Pennsylvania law, each of the foregoing are misdemeanors. *See* 18 Pa. C.S. §§ 2701, 2705, 2706. The Pennsylvania legislature has specifically limited the authority of police officers to make warantless arrests for misdemeanor offenses, providing that such an arrest may only be effectuated if the offense is committed in the presence of the arresting officer or when specifically authorized by statute. *See* Pa. R. Crim. P. 502; *Commonwealth v. Clark*, 735 A.2d 1248, 1251 (1999); *Commonwealth v. Bullers*, 637 A.2d 1326, 1329 (1994). Officer Orlando arrested Defendant without a warrant based on alleged conduct that occurred outside the officer's presence.

However, Defendant's arrest was constitutional because it was authorized by statute. Section 2711 provides, in pertinent part, as follows:

> A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section . . . 2701 (relating to simple assault), . . . 2705 (relating to recklessly

---

[7] In its reply, the Government highlights that Plaintiff was also arrested for and charged with possession of a firearm by a prohibited person, in violation of 18 Pa. C.S. § 6105, which it argues is a felony that would not have required that the officers observed physical injury or other corroborative evidence of physical injury. (Doc. 51, p. 3 of 6.) The officers testified that they decided to arrest Defendant based on Hightower's recitation of events. Thus, to the extent Plaintiff was lawfully arrested for committing a felony, the court need not address whether Section 2711 permitted the officers to make an arrest.

> endangering another person), 2706 (relating to terroristic threats) . . . against a family or household member although the offense did not take place in the presence of the police officer. A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence.

18 Pa. C.S. § 2711. Section 2711 specifically authorizes the police to make a warrantless arrest for certain specified misdemeanors, including simple assault, recklessly endangering another person, and terroristic threats, even though the crime was committed outside the presence of the officer. However, the crime must be committed in the context of a domestic relationship and there must still be probable cause to arrest for the underlying substantive offenses. Moreover, the arrest authority conferred by this statute is limited by the following proviso: "A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence." 18 Pa. C.S. § 2711.

Here, the facts available to the officers at the time of the arrest were sufficient to establish probable cause to believe that Defendant committed a Section 2711 misdemeanor against a household member and that sufficient corroborative evidence supported such a belief, authorizing a warantless arrest pursuant to Pennsylvania's domestic violence law. Hightower explicitly recounted the events of the evening, including a detailed account of the physical assault and threats of serious bodily harm to which she was subjected by Defendant. Officer Gilliland testified that he saw signs of physical injuries to Hightower (Doc. 42, p. 58 of 101), and Hightower's allegation of a physical assault was further corroborated by a two-inch cut to her forearm (*Id*. at p. 64 of 101; Def. Ex. 209). Furthermore, Officer Orlando testified that he confronted Defendant upon arriving at the Gas Avenue

residence, at which time Defendant claimed that Hightower had exaggerated only the severity of her claims. Based on the foregoing, the court concludes that there existed evidence sufficient to warrant probable cause to believe Defendant committed simple assault, recklessly endangering another person, and terroristic threats, and that the officer observed recent physical injury and other corroborative evidence sufficient to justify a warrantless arrest.

Having rejected Defendant's argument that his removal was unlawful as in violation of Section 2711, Defendant's motion to suppress on the grounds that his arrest and removal effectively invalidate Hightower's consent to search is resolved by *Fernandez*. As recognized in *Fernandez*, an occupant who is absent due to a lawful detention or arrest is in the same position as an occupant who is absent for any other reason. 134 S.Ct. at 1134. Here, the facts establish that Officer Orlando responded to a report of domestic assault and, after speaking with Hightower, determined cause existed for Defendant's arrest. Pursuant to York City Police Department protocol, Officer Orlando immediately transported Defendant directly to the central booking office. There is no indication Defendant's arrest for suspected domestic assault was anything other than legitimate; indeed, based on the facts established at the suppression hearing, such charges were warranted and remain pending. *See Commonwealth v. Williams*, CP-67-CR-2349-2014, Docket (Pa. Com. Pl. York. Cnty. Mar. 19, 2014). Thus, the court is not confronted with the narrow circumstance announced in *Randolph* of the objectively unreasonable removal of an objecting co-tenant by police to avoid a possible refusal. By virtue of Defendant's lawful removal from the immediate scene, Hightower had full authority to consent to a search of her home. *See id.* at 1137.

Lastly, although the court found that the officers never requested Defendant's consent in relation to the search of the Gas Avenue residence, the court concludes that, even had he withheld consent, his doing so would not have been effective at the time Hightower consented. *See Fernandez*, 134 S.Ct. at 1135-36 (characterizing a rule establishing that "an objection, once made, should last until it is withdrawn by the objector" as "unreasonable"). Accordingly, even if Defendant had withheld consent, Hightower's consent was nevertheless valid because she was present at the scene after Defendant had been lawfully removed.

### IV.    Conclusion

The court finds that Hightower, a co-habitant of the Gas Avenue residence, had authority to give, and voluntarily gave, consent to search the premises after Defendant had been lawfully arrested. Based on the foregoing, the court concludes that the search of the Gas Avenue residence and seizure of the Ruger .44 Magnum Caliber Super Black Hawk revolver was constitutional. Accordingly, the court will deny Defendant's motion to suppress in its entirety.

An appropriate order will issue and be docketed separately.

S/Sylvia H. Rambo  
United States District Judge

Dated: January 14, 2015.